## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. | **MARILYN ALLEY,** ) | |
| | ) | |
| | **Plaintiff,** ) | |
| **v.** | ) | **CIV-15-** 334-W |
| | ) | |
| 1. | **WAL-MART ASSOCIATES, INC.,** ) | |
| | **a/k/a WAL-MART STORES, INC.,** ) | |
| | **and** ) | |
| 2. | **WAL-MART STORES EAST, LP,** ) | |
| | ) | **ATTORNEY LIEN CLAIMED** |
| | **Defendants.** ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

**COMES NOW** the Plaintiff, Marilyn Alley, and for her Complaint in the above-entitled action, alleges and states as follows:

## PARTIES

1.      Plaintiff, Marilyn Alley, is an adult female resident of Noble County, Oklahoma.

2.      Defendants are:

a. Wal-Mart Associates, Inc., a/k/a Wal-Mart Stores, Inc., an entity doing business in Payne County, Oklahoma; and

b. Wal-Mart Stores East, LP, an entity doing business in Payne County, Oklahoma.

1

## JURISDICTION AND VENUE

3.      This is a cause of action arising out of Plaintiff's former employment with Defendants and is based on claims of (a) age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), (b) disability discrimination and retaliation in violation of the ADA and ADAAA, and (c) interference with and retaliation for use of leave under the Family Medical Leave Act ("FMLA").

4.      This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331.

5.      All of the actions complained of herein occurred in Payne and Noble counties, Oklahoma.  Defendants are doing business in such counties and may be served in said counties.  Payne and Noble counties are located in the Western District of Oklahoma. Wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

6.      Plaintiff has exhausted her administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  On or about March 31, 2014, she contacted the EEOC and completed an intake questionnaire on or about April 22, 2014.  She filed a perfected Charge on or about August 7, 2014 and an Amended Charge on or about October 27, 2014.  The EEOC issued a Dismissal and Notice of Rights letter dated January 14, 2015 (received by Plaintiff by mail thereafter).  Plaintiff has timely filed this action within ninety (90) days of receipt of the same.

2

## STATEMENT OF FACTS

7.      Plaintiff Marilyn Alley was born in 1935, making her over the age of forty (40) at all times relevant hereto.

8.      Plaintiff began her employment with Defendants in or around March 2005 as a Cashier at the store located in Stillwater, Oklahoma, working the night shift.  Plaintiff was hired by Justin (last name unknown), who transferred from the Stillwater store several years into Plaintiff's employment.  For the majority of Plaintiff's employment, she reported directly to hourly manager Gail Stanbrough, who was significantly younger than Plaintiff.

9.      In or around June 2012, Plaintiff was shopping at a Wal-Mart store located in Perry, Oklahoma and fell (while off-duty) breaking a rib and injuring her back and neck.  In or around February 2013, Plaintiff filed a personal injury lawsuit against Wal-Mart based on such injury.

10.     Due to such injury, Plaintiff applied for and received intermittent FMLA leave beginning in or around June 2012.  Plaintiff continued to take FMLA leave through 2014 for doctors' appointments and medical treatment.   She sought specialized care for pain management for her back and neck, receiving shots to her back and neck every few months to assist with the pain, after which she was directed to be off work for several days.  She completed FMLA paperwork as necessary to ensure her FMLA remained current.  And, on days Plaintiff needed to be off work due to her medical conditions, she called the Defendants' toll-free number before her shift to report her absence - in accordance with

policy and procedure.

11.     Due to such injuries, Plaintiff is a qualified individual with a disability within the meaning of the ADA and ADAAA in that she is disabled, has a record of disability, and/or was perceived as disabled.  Her disabilities substantially limit and/or limited her in one or more major life activities, including but not limited to lifting, walking, standing, breathing, pushing, pulling, and sleeping.  Her disabilities impact one or more of her internal bodily processes, including but not limited to normal respiratory, nerve and musculoskeletal function.  However, at all times relevant hereto, Plaintiff was able to perform the essential functions of her job with or without reasonable accommodations.

12.     In or around August 2012, a few months after her initial request for FMLA, Co-Manager Mark Spurrier (who is significantly younger than Plaintiff) became Plaintiff's supervisor.  Spurrier treated Plaintiff less favorably tha her younger, similarly situated co-workers.  For instance, he would nitpick Plaintiff's performance and frequently stand behind her work station and observe her performance for an extended period of time.  However, he did not observe younger employees in such manner.

13.     Moreover, on at least three (3) occasions, Spurrier approached Plaintiff while in front of customers, put his finger in her face, and asked in an aggressive manner, "How old are you?"  Janet Crosier (who is significantly younger than Plaintiff), the Assistant Personnel Director, also made comments to Plaintiff in a derogatory manner on at least seven (7) occasions that Plaintiff was "old enough to retire." Additionally, Stanbrough told Plaintiff

she was going to be the next "door greeter" as she was the oldest in the store, that she "should no longer be working" due to her age, and that she was "just like [Stanbrough's] mother" who had been bed-ridden for several years.

14.     On or about February 28, 2013, Plaintiff received an annual performance review where she received an overall rating of "Development needed." Stanbrough signed and issued the evaluation, with approval by her next level supervisor Wendy Payne (who is in her 30s). Significantly, Plaintiff had previously received positive performance reviews.

15.     In or around Fall 2013, Spurrier issued a write-up to Plaintiff (the first in her employment) after a customer allegedly complained about how long he had to wait at checkout.  The customer had purchased numerous items with coupons, requiring manager approval for the transaction.  Plaintiff contacted the manager on duty pursuant to policy. However, Lynn (last name unknown), the Customer Service Manager ("CSM") (who is significantly younger than Plaintiff), did not assist Plaintiff for about 45 minutes.  Lynn, however, was not disciplined for failing to assist Plaintiff in a timely manner.

16.     On or about September 4, 2013, Plaintiff's performance was re-evaluated and, again, she received a "development needed" overall rating.  Hourly supervisor Vikkisa Dawson and next level supervisor Spurrier then issued a write-up (her second) allegedly for the two "development needed" reviews.

17.     In or around December 2013, Plaintiff was issued a third write-up allegedly regarding the purchase of merchandise.  Particularly, while on her break and consistent with

policy, Plaintiff purchased several items as Christmas gifts. While checking out, Plaintiff realized she did not have enough money to cover the purchase. Therefore, one of Plaintiff's co-workers, Cara Brown, offered to purchase the items for Plaintiff when Brown went on break. As such, Assistant Manager Anna (last name unknown) directed Plaintiff to put the items behind the register until Brown could complete the purchase. Plaintiff did as she was directed, but then received a write-up from Anna for having unpaid merchandise behind the register. Plaintiff pointed out that she was doing as she had been told and that this was discriminatory in that younger employees had engaged in the same type of conduct without discipline. Anna then stated she would remove the write-up, which was allegedly done.

18.   In or around January 2014, Plaintiff was notified of her termination by Manager David Mooneyham allegedly for acquiring too many points from absences. However, Plaintiff reminded Mooneyham that her absences were covered by FMLA. As such, the following day, the termination was rescinded and Plaintiff was returned to work.

19.   On or about January 13, 2014, Plaintiff was issued a new third write-up for allegedly walking away from a customer without completing a transaction. Plaintiff disagreed with the allegation and asked to review the video footage of the incident, but was not allowed to do so.

20.   On or about February 13, 2014, Plaintiff's annual performance evaluation was conducted by Stanbrough. Plaintiff received a "solid performer" rating, with her review stating she had made "vast improvements."

6

21.     In spite of this, about one month later, on or about March 19, 2014, Plaintiff was fired (for the second time) by Mooneyham for allegedly being the subject of a complaint and for having received three (3) write-ups in a year.  Such reasons, however, were pretext for discrimination and retaliation.

22.     Particularly, the complaint allegedly lodged against Plaintiff was for an event that occurred nearly one month before her termination in Defendants' parking lot when Plaintiff was not on duty.

23.     Plaintiff had been waiting in her car for a parking spot when a man sped around her car, cutting her off and taking the spot.  After finding another parking spot, Plaintiff (who is 78 years old) walked over to the man's truck and told the driver, who appeared to be intoxicated, that he had almost hit her and that he had scared her.  She then walked away. Plaintiff was not on duty at the time and was not wearing anything to identify her as an employee of Defendants.  In fact, Mooneyham stated that the driver of the truck did not know Plaintiff was an employee of Defendants at the time this occurred, but approximately two days later recognized her when he was in the store.  Mooneyham also stated that after reviewing surveillance footage, he saw the driver of the truck place a gun on his dashboard (which Plaintiff did not see) before driving off.

24.     At Mooneyham's request, Plaintiff completed a report on or about February 24, 2014 detailing the incident.

25.     Mooneyham refused to show Plaintiff the alleged complaint.

7

26.     At the time of Plaintiff's termination, Plaintiff had intermittent FMLA leave still available to her.

27.     Toward the end of her employment, Plaintiff noticed Defendants terminating many older, long-term employees and replacing them with individuals in their 20s.

28.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered the injuries described hereafter.

## COUNT I - ADEA

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows.

29.     The matters alleged above constitute violations of the ADEA in the form of age discrimination and retaliation for complaining of the same.

30.     Plaintiff is entitled to relief under the ADEA because, at all times relevant to this action, she was over the age of forty (40), was qualified for her job, was disciplined and terminated, and her position was not eliminated.

31.     As damages, Plaintiff has suffered lost earnings, past and future, and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.  Plaintiff is also entitled to liquidated damages based upon Defendants' willful conduct in violating the ADEA.

## COUNT II - ADA AND ADAAA

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

32.     The matters alleged above constitute discrimination based on a disability, a record of a disability and/or perceived disabilities in violation of the ADA and ADAAA.

33.     More specifically, Plaintiff was a qualified individual with a disability in that she suffers from a physical impairment (i.e. rib, back and neck injury) which substantially limits her ability to perform one or more major life activities as set forth above.  Further, Plaintiff's disability impacts one or more of her internal bodily processes as shown herein.

34.     Despite said impairments, Plaintiff could perform the essential functions of her job with or without reasonable accommodations at all relevant times hereto.

35.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

36.     Because the actions of Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT III: FMLA

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

37.     The matters alleged above constitute interference with and retaliation for Plaintiff's use and/or attempted use of medical leave in violation of the Family Medical

Leave Act.

38.     Plaintiff was entitled to medical leave because she required time off to care for herself due to serious health conditions (as set forth above) and worked for Defendants (i.e., an entity with more than 50 employees within a 75 mile radius of Plaintiff's worksite), for more than one (1) year and for more than 1,250 hours within the one year prior to her need for leave.

39.     Defendants interfered with and retaliated against Plaintiff for her use of time off.

40.     As set forth herein, Defendants' actions were in willful violation of the law. Defendants were aware of FMLA and the requirements contained therein, but willfully violated Plaintiff's FMLA rights.

41.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered injuries and is entitled to recovery of all damages, including, but not limited to, lost wages (past and future), liquidated damages (based on the willfulness of Defendants' violation of the FMLA), attorney fees and costs.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendants and assess actual, compensatory, punitive damages, and liquidated damages, together with pre- and post-judgment interest, costs, attorney's fees and such other relief as this Court may deem equitable and appropriate.

10

**RESPECTFULLY SUBMITTED THIS 31ˢᵗ DAY OF MARCH, 2015.**

s/Jana B. Leonard
JANA B. LEONARD, OBA# 17844
EMILY VAN VOLKINBURG, OBA #31744
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800       (telephone)
(405) 239-3801       (facsimile)
leonardjb@leonardlaw.net
emilyv@leonardlaw.net

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED
