## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MARILYN ALLEY,** | |
| **Plaintiff,** | |
| **v.** | **Case No.  CIV-15-334-W** |
| **WAL-MART ASSOCIATES, INC., a/k/a WAL-MART STORES, INC., and WAL-MART STORES EAST, LP,.** | |
| **Defendants.** | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## AND BRIEF IN SUPPORT

Steven A. Broussard, OBA #12582
HALL, ESTILL, HARWICK, GABLE,
GOLDEN & NELSON, P.C.
320 South Boston Avenue, Suite 200
Tulsa, OK  74103-3706
Telephone:  (918) 594-0400
Facsimile:  (918) 594-0505
Email:  sbroussard@hallestill.com

**ATTORNEYS FOR DEFENDANTS,**

## Table of Contents

UNDISPUTED MATERIAL FACTS ................................................................ 1

ARGUMENT AND AUTHORITIES ............................................. 9
1.   Standard Governing Summary Judgment in Federal Court .................................. 9
2.   Plaintiff's ADA and ADEA Claims Are Timed Barred To The Extent Such Claims Are Based On Events That May Have Occurred Before June 30, 2013 ... 10
3.   Plaintiff Cannot Establish a Claim for Age Discrimination……………………...11
4.   Plaintiff Cannot Establish an ADEA Retaliation Claim…………………………17
5.   Plaintiff Cannot Establish A Disability Discrimination Claim…………………...18
6.   Plaintiff Cannot Establish A Cause of Action for Interference Under the FMLA………………………………………………………………………...21
7.   Plaintiff Cannot Establish A Prima Facie Case of FMLA Retaliation…………...22

CONCLUSION……………………………………………………………………23

**TABLE OF AUTHORITIES**

Page

**CASES**

*Anderson v. Clovis Mun. Schs.,* 2008 WL 410435 (10th Cir. Feb 15, 2008) .................. 14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ............................................. 9

*Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1219 (10th Cir. 2007) .............................. 19

*Corneveaux v. CUNA Mut. Ins. Group,* 76 F.3d 1498 (10th Cir.1996) .......................... 17

*Dirusso v. Aspen School Dist. No. 1,* 123 F.App'x. 826 (10th Cir.2004) ....................... 17

*Doebele v. Sprint/United Management Company*, 342 F.3d 1117, 1135 (10th
    Cir. 2003) ....................................................................................................... 15, 20

*Duncan v. Manager, Dep't of Safety,* 397 F. 3d 1300, 1308 (10th Cir. 2005) ............... 10

*E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037-38 (10th Cir. 2011) .................... 19

*EEOC v. PVNF, L.C.C.,* 487 F.3d 790, 800 (10th Cir. 2007) ......................................... 13

*Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138 (10th Cir. 2004) ........................... 16

*Foreman v. Western Freightways, LLC*, 958 F. Supp. 2d 1270 1278 (D.
    Colo. 2013) ............................................................................................................. 14

*Garcia v. Bd. of Regents of the Univ. of New Mexico*, 2010 WL 2606285
    (D.N.M. Jun. 2, 2010) ........................................................................................... 14

*Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 129 S. Ct. 2343
    (2009) ................................................................................................................ 11, 12

*Haynes v. Level 3 Commc's, LLC*, 456 F.3d 1215, 1224-25 (10th Cir. 2006) ............... 13

*Jones v. Denver Pub. Sch.,* 427 F.3d 1315 (10th Cir. 2005) ..................................... 11, 21

*Jones v. Oklahoma City Public Schools*, 617 F. 3d 1273, 1277 ................................ 11, 12

*Justice v. Crown Cork & Seal Co., Inc.*, 527 F.3d 1080, 1086 (10th Cir.
    2008) ........................................................................................................................ 19

*McCown v. UOP, Inc.*, 1995 U.S. Dist. LEXIS 12655 (N.D. Ill. 1995) ........................ 22

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) ........................ 12, 18

*McGowan v. City of Eufala,* 472 F.3d  736, 742-43 (10th Cir. 2006) .............................. 13

*Medlock v. United Parcel Serv., Inc.*, 608 F.3d 1185, 1193 (10th Cir. 2010) ................. 11

*Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) .................................... 16, 18

*Pinkerton v. Colo. Dept of Transp.*, 563 F.3d 1052, 1064 (10th Cir. 2009) .............. 15, 16

*Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995) ......................................... 18

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) .................... 12

**TABLE OF AUTHORITIES**
(continued)

Page

*Reinhardt v. Albuquerque Public Schools Bd. of Educ.*, 595 F.3d 1126,1131 (10th Cir. 2010) ................................................................................................ 18

*Rivera v. City & Cty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004) ............................ 13

*Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955 (10th Cir. 2002) ................ 22

*Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 545 (10th Cir. 2014) ................ 19, 20

*Stinnett, v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003) .................................... 13

**STATUTES**

29 U.S.C. §623(a)(1) ...................................................................................................... 11

42 U.S.C § 12102(1) ....................................................................................................... 19

42 U.S.C § 12103(3)(B) .................................................................................................. 19

42 U.S.C. § 12117 ............................................................................................................. 9

42 U.S.C. § 2000e-5 ........................................................................................................ 10

42 U.S.C. § 2000e-5(e)(1) .............................................................................................. 10

**RULES**

29 C.F.R. § 1630.15(f) .................................................................................................... 19

29 C.F.R. § 1601.12(b) .................................................................................................... 10


Fed. R. Civ. P. 56(a) ......................................................................................................... 9

Fed. R. Civ. P. 56(c)(1)(A) ............................................................................................... 9

Fed. R. Civ. P. 56(c)(1)(B) ............................................................................................... 9

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Defendants Wal-Mart Associates, Inc.[1], Wal-Mart Stores, Inc. and Wal-Mart Stores East, L.P.[2], by and through their undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully submit their Motion for Summary Judgment and Brief in Support (the "MSJ") against Plaintiff. For purposes of the MSJ only, the Defendants will be jointly referred to as "Walmart" or the "Defendants". Based on the undisputed material facts and governing law, Walmart requests that the Court grant the Defendants judgment as a matter of law on all of Plaintiff's claims.

Plaintiff is a former employee of Wal-Mart Stores East, L.P. who worked at a Walmart store in Stillwater, Oklahoma as a Cashier. She has alleged that Walmart discriminated against her because of her age and because of an alleged disability in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and the Americans with Disabilities Act ("ADA"). Plaintiff also alleges that Walmart retaliated against her in violation of the ADEA when she complained of the alleged age

---

[1] Wal-Mart Associates, Inc. denies that it is also known as Wal-Mart Stores, Inc., as Wal-Mart Associates, Inc. is the payroll entity through which all Wal-Mart Stores East, L.P. employees or Associates are paid and that is the sole function of Wal-Mart Associates, Inc.

[2] Wal-Mart Stores East, L.P. was Plaintiff's employer under applicable law at all relevant times and is the only correct operating entity/Defendant in the case at bar. Wal-Mart Associates, Inc. is not known as Wal-Mart Stores, Inc. Similarly, Wal-Mart Stores, Inc. did not employ Plaintiff and is not a proper party to this action.

discrimination.  She also claims that Walmart interfered with her right to leave under the Family and Medical Leave Act ("FMLA") and retaliated against her for exercising her rights under the FMLA.

As demonstrated by the Undisputed Material Facts ("UMFs") and applicable authorities, Walmart is entitled to summary judgment on all of Plaintiff's claims. Plaintiff's allegations of discrimination and retaliation are not supported by any admissible evidence.  For these reasons, discussed in more detail below, Walmart is entitled to summary judgment on all of Plaintiff's claims.

## I.  Undisputed Material Facts

1.      Plaintiff began her employment with Walmart in March 2005.  *¶8, Complaint* [Doc. #1].  Until her discharge from employment in 2014, she worked as a Cashier at Store 137 in Stillwater, Oklahoma.  *Id.*

2.      During the course of her employment with Walmart,  Plaintiff never supervised or evaluated the performance of other Walmart employees or Associates. *Plaintiff's depo., attached as Exhibit 1, 185:22-24, 189:10-11, 213:21-24.*

*Relevant Walmart Policies, Procedures and Guidelines*

3.      In 2013 and 2014, Walmart applied a "Coaching for Improvement Policy" which outlined various disciplinary steps or "coachings" that the company could adopt to address unsatisfactory performance or conduct by employees.    *Affidavit of Kathryn Stanton ("Stanton"), attached as Exhibit. 2, ¶6.*   Unless reversed, coachings were only "active" for the 12-month period following the coaching. *Id., Coaching for Improvement Policy (WM/Alley.002127).*

2

4.      Under the Coaching for Improvement Policy, if management deemed that an employee's  job performance or conduct warranted a level of coaching and the employee had already received three active coachings in the 12 months immediately preceding the unacceptable job performance or conduct, the employee would be subject to termination.   *Ex. 2, Stanton Aff.,    Coaching for Improvement Policy (WM/Alley.002126).*

5.      In 2013 and 2014, Walmart also had  an "Attendance/Punctuality Policy". *Ex. 2, Stanton Aff., ¶2.*   Under that policy, an employee was subject to coaching if she had four or more "occurrences" during a rolling six-month period.   *Id., Attendance/Punctuality Policy (WM/Alley.002143).*   An "occurrence" is an unexcused absence.  *Affidavit of David Mooneyhan ("Mooneyhan"), attached as Exhibit. 3, ¶ 2.*

6.      Walmart store managers monitored employees' attendance by reviewing Associate Attendance Reports which reflected approved and unapproved absences.  Ex. 3, *Mooneyhan Aff., ¶5.*

7.      Effective May 1, 2013, Walmart adopted an "Interim FMLA Leave of Absence Policy - Hourly Associates in Designated Facilities" policy (the "FMLA Leave Policy"). *Ex. 2, Stanton Aff., ¶¶ 3-4.*

8.      As of May 1, 2013, another company, Sedgwick, began administering the FMLA Leave Policy.   *Ex. 1, Pl's depo., 196:4-197:23, Exs. 43, 44;  Ex. 2, Stanton Aff., ¶¶4-5;  Ex. 3, Mooneyhan Aff., ¶3-5.*

9.      After May 1, 2013, employees who had been approved for intermittent FMLA leave were required to notify Sedgwick of every absence related to the approved

3

FMLA leave.    *Ex. 1 Pl's depo., Ex. 44 (WM/Alley.000630); Ex. 2, Stanton Aff., ¶4 (WM/Alley000006 of excerpt from "Leave of Absence Toolkit - Hourly Associates"); Ex. 3, Mooneyhan Aff., ¶¶ 3-5.*

10.    An employee's failure to call Sedgwick for each such absence could result in an "occurrence" as defined in the Attendance/Punctuality Policy. *Ex. 2, Stanton Aff., ¶ 4.*

11.    By no later than May of 2012, Walmart had implemented its "Performance Evaluations Management Guidelines - Walmart Stores" (the "Guidelines"). *Affidavit of Aimee Maddera ("Maddera"), attached as Exhibit 4, ¶2.*

12.    Under the Guidelines, if an hourly non-exempt Associate received an overall annual performance  rating of "Development Needed" or "Below Expectations", the Associate's performance was to be re-evaluated within 150 and 180 days after the Associate's anniversary date. *Ex. 4, Maddera Aff., ¶2, the Guidelines (WM/Alley.000716).*

13.    If the Associate's re-evaluation resulted in an overall rating of Development Needed and/or Below Expectations, the Associate would be subject to "coaching" in accordance with the Coaching for Improvement Policy.    *Id.*

*Plaintiff's FMLA Leave During Her Employment*

14.    Since at least 2009, while employed by Walmart, Plaintiff has submitted several separate requests for FMLA leave.    *Ex. 1, Pl's depo. 190:19-196:2, 218:8-219:14, Exs. 37-45, 47.*   None of her requests for FMLA leave were ever denied. *Id. at 207:21-208:5.*

*Plaintiff's 2013 and 2014 Coachings*

15.     On August 17, 2013, an Assistant Manager at Store 137, Mark Spurrier ("Spurrier"),  received a complaint from a customer regarding Plaintiff.  *Affidavit of Spurrier, attached as Exhibit 5, ¶ 2.*  The customer was upset because Plaintiff had complained to the customer that another employee, Customer Service Manager Lynn, was incompetent and did not know how to do her job correctly.  *Id.*   As a result of the customer's complaint, on or about August 18, 2013, a written coaching was issued to Plaintiff.  *Id.*

16.     On or about February 28, 2013, Plaintiff received her annual review for 2012.  In the review, her supervisors noted that her performance related to "Point of Sale", "Judgment", "Execution and Results" and "Adaptability" did not meet their expectations and, as a result, she received Development Needed ratings for those four competencies.  *Ex. 1, Pl's depo., 182:22-185:24, Ex. 35;   Gail Stanbrough ("Stanbrough") depo., attached as Exhibit 6, 33:20-36:23, Ex. 2*; *Stanbrough Affidavit, attached as Exhibit. 7, ¶2.*  Her overall performance rating for 2012, as determined by Walmart's performance rating computer program, was also Development Needed.  *Ex. 1, Pl's depo., Ex. 35 (WM/Alley.000078);  Ex. 4, Maddera Aff., ¶3.*

17.     In accordance with the Guidelines, Plaintiff's performance was reevaluated near early September 2013.  *Ex. 1, Pl's depo., 189:22-190:15, Ex. 36;   Ex. 5, Spurrier Aff., ¶ 3;  Affidavit of Vikkisu Dawson ("Dawson"), attached as Exhibit 8, ¶2.*

18.     Based on the reviewers' observations of Plaintiff's performance during the relevant period, Plaintiff's ratings for four competencies were Development Needed or

5

Below Expectations.   *Ex. 1, Pl's depo., Ex. 36 (WM/Alley.000068-000070);   Ex. 5, Spurrier Aff., ¶3;   Ex. 8, Dawson Aff., ¶2.*   Plaintiff's overall performance rating for the reevaluation was Development Needed.   *Ex. 1, Pl's depo., Ex. 36 (WM/Alley.000071).*

19.     Because Plaintiff's overall performance rating for the reevaluation was Development Needed, in accordance with the Guidelines, Plaintiff received a second coaching on or about September 4, 2013.   *Ex. 5, Spurrier Aff., ¶4.*

20.     In October of 2013, Plaintiff was issued a third coaching because it appeared that she had violated Walmart policy by holding merchandise near a register for later purchase.   *Alicia Stanley ("Stanley") depo., attached as Exhibit 9, 76:3-78:7; Affidavit of Stanley, attached as Exhibit. 10, ¶9;  Mooneyhan depo., attached as Ex. 11, 96:15-104:17, Ex. 14.*

21.     The October 2013 coaching was rescinded by the Store Manager (Mooneyhan) because, based on Plaintiff's comments, management concluded that she may have been confused about the Walmart policy.  Ex. 3, *Mooneyhan Aff., ¶6.*

22.     On January 13, 2014, Plaintiff received a coaching for walking away from a register during the middle of a transaction and allowing a customer to leave the store without paying for cigarettes.  *Ex. 9, Stanley depo., 66:17-76:2;  Ex. 10, Stanley Aff., ¶3.*

23.     On January 19, 2014, the Associate Attendance Report for Plaintiff reflected that she had 13 occurrences  during the six month period immediately preceding January 19, 2014.   *Ex. 3, Mooneyhan Aff., ¶ 5.*    As a result, based on the Attendance/Punctuality Policy,  she was subject to the next level of coaching due to the unexcused absences reflected in the Associate Attendance Report.  *Id.*

24.     As of January 19, 2014, Plaintiff had three active coachings:  August 19, 2013,  September 4, 2013  and January 13, 2014.  *Id.*

25.     Because she had three active coachings when the attendance issue arose, pursuant to Walmart's Attendance/Punctuality Policy and Coaching for Improvement Policy,  Plaintiff was dismissed from employment on January 19, 2014.  *Id.;  Ex. 11, Mooneyhan depo. 109:9-112:5, Ex. 18;  Ex. 1 Pl's depo., 196:4-197:23, Ex. 43*.

26.     Plaintiff appealed the decision to terminate her employment to her Store Manager, Mooneyhan.  *Ex. 1, Pl's depo., 196:4-197:23, Ex. 43*.  Some of the absences that were reflected on her Associate Attendance Report were coded as occurrences because she failed to follow the procedure at that time which required employees approved for FMLA intermittent leave to contact Sedgwick when they would be absent due to an FMLA related reason.  *Id.;  Ex. 11, Mooneyhan depo., 109:6-112:5; Ex. 3, Mooneyhan Aff., ¶¶ 5-6.*

27.     Based on Plaintiff's representation that she was unaware that she should contact Sedgwick, her dismissal was quickly reversed  and she was reinstated as an Associate.  *Id.*

*Plaintiff's Discharge*

28.     In February of 2014, Walmart received a complaint from a customer regarding a confrontation he had with Plaintiff in the Store 137 parking lot.  *Ex. 1, Pl's depo., 203:4-206:24; Ex. 4, Maddera Aff., ¶¶ 4-5;  Ex. 9, Stanley depo., 84:23-92:9;  Ex. 10, Stanley Aff., ¶ 4;  Ex. 11, Mooneyhan depo., 122:3-134:21, Ex. 22.*

29.     According to the customer, on February 6, 2014, immediately after he

pulled into a parking space in front of the store, Plaintiff told him that he had taken her parking spot and that "if I had a gun on me I would shoot you, you little bastard." *Ex. 4, Maddera Aff., ¶ 4.*

30.     Plaintiff denied threatening the customer but she did admit to approaching him in the parking lot after he "took her space", pointed her finger at him and called him rude. *Id.*

31.     At the conclusion of Walmart's review of the customer complaint, Maddera,  then a Regional HR Director, decided that Plaintiff had acted inappropriately towards the customer.   *Ex. 4, Maddera Aff., ¶ 5.*

32.     Because she had three active coachings during the 12 month period prior to the incident[3] in the parking lot, pursuant to the Coaching for Improvement Policy, the next step coaching was termination of Plaintiff's employment, which was approved by Maddera on February 26, 2014. *Id.*

33.     On March 19, 2014, Plaintiff's employment was terminated. *Ex. 1, Pl's depo., 200:5-15, Ex. 46.*

34.     Near the time of Plaintiff's dismissal, several employees under the age of 40 and who were not approved for FMLA leave were discharged from Store 137 for misconduct in accordance with the Coaching for Improvement Policy. *Ex. 3, Mooneyhan Aff., ¶8.*

*Plaintiff's Charge of Discrimination*

35.     On April 25, 2014, Plaintiff submitted an "Intake Questionnaire" to the

---

[3] See UMF 24.

U.S. Equal Employment Opportunity Commission ("EEOC"), in which she alleged that Walmart had discriminated against her because of her race, age, alleged disability and had retaliated against her for complaining of age discrimination. *Intake Questionnaire, attached as Exhibit. 12.*

36.    On or about August 4, 2014, Plaintiff submitted a Charge of Discrimination against Walmart (the "First Charge") to the EEOC. *Ex. 1, Pl's depo., 90:17-91:12, Ex. 5*

37.    On or about October 30, 2014, Plaintiff submitted another  Charge of Discrimination against Walmart (the "Second Charge") to the EEOC. *Id.,  Pl's depo., 100:17-101:14, Ex. 8.*

## II. Argument And Authorities

**1.**    **Standard Governing Summary Judgment in Federal Court.**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*   The moving party may establish the absence of a genuine dispute of fact by "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), or "showing that the materials cited do not establish the…presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact," Fed. R. Civ. P. 56(c)(1)(B).

**2.      Plaintiff's ADA and ADEA Claims Are Timed Barred To The Extent Such Claims Are    Based On Events That May Have Occurred Before June 30, 2013.**

In order to bring a claim under the ADA and ADEA, a charge must be filed within 300 days of the alleged discriminatory conduct.  42 U.S.C. § 12117 (incorporating the procedures of 42 U.S.C. § 2000e-5);  42 U.S.C. § 2000e-5(e)(1);  *Duncan v. Manager, Dep't of Safety,* 397 F. 3d 1300, 1308 (10th Cir. 2005).  "[A] charge is sufficient when the [EEOC] receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of."  29C.F.R. § 1601.12(b).

Here, as evidenced by the Intake Questionnaire, the EEOC first received what could be considered to be a charge of discrimination related to Plaintiff's allegations against Walmart on April 25, 2014.  *See UMF 35.*  Therefore, all of Plaintiff's ADA and ADEA claims based on events that may have occurred before June 30, 2013, the 300th day before the Intake Questionnaire was received by the EEOC, are time barred. Accordingly, Walmart is entitled to summary judgment on Plaintiff's ADEA and ADA claims to the extent they are based on her annual review for 2012[4] and any other actions or conduct that may have occurred before June 30, 2013.

**3.      Plaintiff Cannot Establish a Claim for Age Discrimination.**

In her first claim, in addition to her dismissal, Plaintiff alleges that the evaluations and coachings she received in 2013 and 2014 constituted violations of the ADEA.  *Doc. 1, Complaint ¶¶ 12-19, 27, 29-31.*    Those allegations are not supported by any

---

[4] UMF 16.

admissible evidence and, based on the applicable authorities, Walmart is entitled to summary judgment on Plaintiff's ADEA discrimination claims.

The ADEA prohibits employers from "discriminate[ing] against any individual with respect to her compensation, terms, conditions, or privileges of employment *because of* such individual's age."  *Jones v. Oklahoma City Public Schools*, 617 F. 3d 1273, 1277 (citing 29 U.S.C. §623(a)(1)(emphasis in original).  In 2009, the Supreme Court clarified the meaning of the phrase, "because of," as used in the ADEA, in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 129 S. Ct. 2343 (2009).  The court held that "the ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act."  *Id.* at 2350.  Thus, in order to establish a claim under the ADEA, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."  *Id.*  The Tenth Circuit, in the wake of *Gross*, has stated that it is "not the employer's burden to negate any possible contributor role played by age in the challenged adverse action but, conversely, the employee's burden to show that age was the 'but-for' cause of the action.  *Medlock v. United Parcel Serv., Inc.*, 608 F.3d 1185, 1193 (10th Cir. 2010).

In *Jones*, the court observed that the Tenth Circuit has long held that a plaintiff must prove "but for" causation to hold an employer liable under the ADEA, but "this causal standard does not require [plaintiffs] to show that age was the sole motivating factor in the employment decision."  617 F.3d at 1277. (quotations and citations omitted).  "Instead, an employer may be held liable under the ADEA if other factors contributed to its taking an adverse action, as long as age was the factor that made a difference."  *Id.*

(quotations and citations omitted). "Accordingly, *Gross* does not disturb long-standing Tenth Circuit precedent by placing a heightened evidentiary requirement on ADEA plaintiffs to prove that age was the sole cause of the adverse employment action." *Id.* at 1278.

Under *McDonnell Douglas*, the plaintiff may avoid summary judgment by providing circumstantial rather than direct evidence of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). To do so, plaintiff must first demonstrate a prima facie case of unlawful discrimination. *Id.* at 802. If she succeeds at the first stage, the burden of production shifts to the employer to identify a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* Once the employer advances such a reason, the burden shifts back to the plaintiff to prove the employer's proffered reason was pretextual. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).

In *Jones*, the Tenth Circuit held that *Gross* "has no logical effect on the application of *McDonnell Douglas* to age discrimination claims." 617 F.3d at 1279. The court, quoting *Gross* stated, "the burden of persuasion [n]ever shifts to the party defending an alleged mixed-motives discrimination claim brought under the ADEA. *McDonnell Douglas*…does not shift the burden of persuasion from the plaintiff to the defendant. Rather it shifts only the burden of production. Throughout the three-step process, the plaintiff…carries the full burden of persuasion to show that the defendant discriminated on [an] illegal basis." *Id.*

### *Plaintiff Cannot Prove A Prima Facie Case of Age Discrimination*

Plaintiff has no direct evidence of discrimination. Therefore, the court must apply the burden shifting analysis set out in *McDonnell Douglas*. Generally, to prove a prima facie case of age discrimination, a plaintiff must show: (1) she belongs to a protected class; (2) she "suffered an adverse employment action"; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination. *EEOC v. PVNF, L.C.C.,* 487 F.3d 790, 800 (10th Cir. 2007); *see also Rivera v. City & Cty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004).

In this case, Plaintiff cannot make out a prima facie case of discrimination because she cannot establish the second or third elements of a prima facie case of age discrimination. For example, as to her allegations regarding the alleged "nitpiking" and monitoring of her work by supervisors, alleged questions regarding her age, job assignments, the coachings and her performance reviews[5], those allegations cannot support a prima facie case of age discrimination because Plaintiff suffered no adverse employment actions related to the alleged conduct.

An "[a]dverse employment action" requires a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Piercy v. Maketa,* 480 F.3d 1192, 1203 (10th Cir. 2007). A mere inconvenience or an alteration of job responsibilities is not an adverse employment action. *Id.; see also McGowan v. City of Eufala,* 472 F.3d 736, 742-43 (10th Cir. 2006) (defendant's denial of plaintiff's request for a shift change is not an adverse employment action); *Stinnett, v. Safeway, Inc.*, 337

---

[5] ¶¶ 12-19, Complaint.

F.3d 1213, 1217 (10th Cir. 2003). Here, none of the actions described above and in her Complaint, including the poor 2012 review, rise to the level of an adverse employment action. *See Haynes v. Level 3 Commc's, LLC*, 456 F.3d 1215, 1224-25 (10th Cir. 2006) (placement of employee on performance improvement plan ("PIP") was not an adverse action because it had no immediate effect on her employment status); *Anderson v. Clovis Mun. Schs.,* 2008 WL 410435 (10th Cir. Feb 15, 2008) (neither placement of teacher on "growth plan" nor subsequent issuance of formal reprimand constituted adverse employment action because neither act served as a demotion, altered his pay or changed his responsibilities in any significant manner); *Garcia v. Bd. of Regents of the Univ. of New Mexico*, 2010 WL 2606285 (D.N.M. Jun. 2, 2010) (counseling letter addressing perceived deficiencies in employee's performance did not constitute adverse action); *Foreman v. Western Freightways, LLC*, 958 F. Supp. 2d 1270 1278 (D. Colo. 2013) (warning letters and placement of employee on PIP were not adverse actions because neither had any significant effect on his pay, benefits, work assignments or employment status). For these reasons, except as to her termination of employment, Plaintiff cannot prove a prima facie case of discrimination because she cannot point to evidence sufficient to demonstrate that she suffered an adverse action as defined under the ADEA (or the ADA).

Furthermore, with regard to all of her allegations, Plaintiff cannot demonstrate that "the challenged action took place under circumstances giving rise to an inference of discrimination," the third element of her prima facie case. As discussed in the UMF, like any other Associate, she was reviewed by supervisors who provided their input regarding

their observations of her job performance;[6] she was coached for perceived poor performance or misconduct in accordance with legitimate Walmart policies;[7] and she was discharged in accordance with Walmart policy as a result of a customer complaint regarding, at a minimum, her rude conduct in the Store 137 parking lot[8]. These facts simply do not give rise to an inference of age discrimination. For all of the reasons discussed above, Walmart is entitled to summary judgment on Plaintiff's ADEA discrimination claim because she cannot establish a prima facie case of age discrimination.

***There Is No Evidence of Pretext In This Case***

Although Plaintiff cannot establish a prima facie case of discrimination, assuming for the sake of argument that she could do so, Walmart is nonetheless entitled to summary judgment on Plaintiff's discrimination and retaliation claims because she cannot establish pretext.

"Once the plaintiff had made out a prima facie case, the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Pinkerton v. Colo. Dept of Transp*., 563 F.3d 1052, 1064 (10th Cir. 2009). The employer's burden is one of production, not persuasion. *Doebele v. Spring/United Management Company*, 342 F.3d 1117, 1135 (10th Cir. 2003). Here, Walmart has introduced evidence that Plaintiff was reviewed, coached and discharge in accordance with legitimate Walmart policies and that she was not treated more harshly than other Associates. *UMFs 3-13, 15-25, 28-*

---

[6] UMFs 16-18.
[7] UMFs 3-13, 15, 19-25.
[8] UMFs 28-34.

*34.* These constitute legitimate, nondiscriminatory reasons.

Once the employer has articulated a legitimate reason for the adverse employment action, plaintiff must demonstrate that the employer's asserted reasons are pretextual. *Pinkerton v. Colo. Dept of Transp.*, 563 F.3d 1052, 1064 (10th Cir. 2009). Plaintiff can show pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact find could rationally find them unworthy of credence." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quotations and citations omitted). It is not enough, however, that a fact finder could disagree with the employer's assessments of an employee's skills and abilities. *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138 (10th Cir. 2004). The relevant inquiry also is not whether the employer's proffered reasons were wise, fair or correct, but whether the employer honestly believed those reasons and acted in good faith on those beliefs. *Id.* Consequently, in order to show pretext, the plaintiff must call into question the honesty or good faith of the employer. *Exum*, 389 F.3d at 1137.

Plaintiff cannot meet this burden. Here, Plaintiff cannot dispute that her supervisors genuinely believed that her performance was lacking in certain areas during 2012 and part of 2013, nor can she demonstrate that she received coachings and was discharged due to what management believed to be misconduct. Furthermore, there is no admissible evidence that younger workers were treated more favorably that Plaintiff. Based on these facts, Plaintiff cannot prove pretext for age discrimination. For this

additional reason, Walmart is entitled to summary judgment on Plaintiff's ADEA discrimination claim.

### 4.    Plaintiff Cannot Establish an ADEA Retaliation Claim.

The ADEA contains the same prohibition against retaliation for the exercise of rights it protects.  "The ADEA's anti-retaliation provision forbids an employer from discriminating against an employee because she 'has opposed any practice made unlawful' by the statute, or because she 'has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation' under the statute."  *Dirusso v. Aspen School Dist. No. 1,* 123 F.App'x. 826, 837 (10th Cir.2004) (unpublished) (quoting 29 U.S.C. §623(d)).  To establish a *prima facie* case of ADEA retaliation, a plaintiff must show (1) she engaged in protected activity; (2) she suffered adverse action at the employer's hands either after, or contemporaneously with, her protected activity; and (3) a casual connection exists between her protected activity and the adverse action.  *Corneveaux v. CUNA Mut. Ins. Group,* 76 F.3d 1498, 1507 (10th Cir.1996).

For the same reasons discussed above with regard to Plaintiff's ADEA discrimination claim, Plaintiff cannot establish a prima facie case of ADEA retaliation. Except with regard to her dismissal, she cannot establish that she suffered an adverse action.  Furthermore, there is no evidence of a causal connection between any alleged complaints of age discrimination and any alleged adverse action.  For these reasons, Walmart is entitled to summary judgment on Plaintiff's ADEA retaliation claim.

### *There Is No Evidence of Pretext For Retaliation In This Case*

17

As was addressed above, Walmart has articulated legitimate, non-retaliatory explanations for its actions with respect to Plaintiff and she has no evidence from which a factfinder could infer pretext.

### 5.      **Plaintiff Cannot Establish A Disability Discrimination Claim**

Plaintiff claims that Walmart took adverse actions against her because of a rib, back or neck injury that she allegedly had.    *¶¶32- 33, Complaint.*    Plaintiff cannot present any evidence sufficient to demonstrate that she was a victim of disability discrimination or to maintain an ADA claim.

The ADA prohibits "discriminate[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."    42 U.S.C § 12112(a).    Disability discrimination can be shown by direct or circumstantial evidence.  *See Reinhardt v. Albuquerque Public Schools Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010).  ADA discrimination cases based on circumstantial evidence are governed by the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).  Pursuant to this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination.  If she does so, "then the defendant must offer a legitimate, non-[discriminatory] reason for the employment action.  The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d  1164, 1170 (10th Cir. 2006) (citations

omitted).  In order to defeat a motion for summary judgment, the plaintiff must show that

"there is a genuine dispute of material fact as to whether the employer's proffered reason

for the challenged action is pretextual-i.e., unworthy of belief."  *Randle v. City of Aurora*,

69 F.3d 441, 451 (10th Cir. 1995).

In order to establish a *prima facie* case under the ADA, a plaintiff must

demonstrate  (1) that she is a disabled person within the meaning of the ADA; (2) she

qualified, that is, she is able to perform the essential functions of the job, with or without

reasonable accommodation; and (3) suffered discrimination by an employer.   *E.E.O.C.*

*v. C.R. England, Inc.*, 644 F.3d 1028, 1037-38 (10th Cir. 2011) (quoting *Justice v. Crown*

*Cork & Seal Co., Inc.*, 527 F.3d 1080, 1086 (10th Cir. 2008)).   The ADA defines

disability as:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

> (B) a record of such an impairment; or

> (C) being regarded as having such an impairment . . . .

42 U.S.C § 12102(1).  Impairments that are "transitory and minor" may not be used to

support a claim of disability discrimination, and an impairment is transitory if it has an

actual or expected duration of less than six months.  42 U.S.C § 12103(3)(B).  The

determination of whether a condition is transitory and minor must be made using an

objective standard.  29 C.F.R. § 1630.15(f).  The mere fact that an employee applies for

and receives FMLA leave does not show that the employer regarded an employee as

disabled.  *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1219 (10th Cir. 2007).  In the

Tenth Circuit, an ADA plaintiff has the burden to show "(1) [s]he has an impairment that (2) substantially limits (3) a major life activity." *Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 545 (10th Cir. 2014). The first and third requirements are matters of law for the Court to decide, but the second requirement is a question of fact that must be submitted to a jury if there is a genuine dispute. *Id.*; *Doebele v. Sprint/United Management Co.*, 342 F.3d 1117, 1129 (10th Cir. 2003).

Here, Plaintiff cannot present admissible evidence sufficient to show that she was disabled or suffered discrimination by Walmart. There is absolutely no evidence that Plaintiff was disabled or that any Walmart decision makers thought she had a disability. Additionally, as discussed above, the circumstances surrounding the alleged adverse actions do not give rise to an inference of discrimination. For these reasons, Plaintiff cannot establish a prima facie case of disability discrimination and, therefore, Walmart is entitled to summary judgment on that claim.

### There Is No Evidence of Pretext For Disability Discrimination

As was addressed above, Walmart has articulated legitimate, non-retaliatory explanations for its actions with respect to Plaintiff and she has no evidence from which a factfinder could infer pretext.

**6.** **Plaintiff Cannot Establish A Cause of Action for Interference Under the FMLA.**

Although she was granted numerous FMLA leaves during her employment with Walmart and was never denied a FMLA request[9], incredibly, Plaintiff argues that Walmart interfered with her use or attempted use of FMLA. *¶37, Complaint.* There is no

---

[9] UMF 14.

evidence that Walmart violated the FMLA with respect to its treatment of Plaintiff.

To establish an interference claim under the FMLA, Plaintiff must show "(1) that she was entitled to FMLA leave, (2) that some adverse action by Walmart interfered with her right to take FMLA leave, and (3) that Walmart's action was related to the exercise or attempted exercise of her FMLA rights." *Jones v. Denver Pub. Sch.,* 427 F.3d 1315, 1319 (10th Cir. 2005). Plaintiff cannot establish the second or third elements necessary to support an interference claim.

As discussed, Plaintiff has never been denied FMLA leave. *UMF 14.* Furthermore, as discussed above, there is no evidence of a causal connection between any her requests for FMLA leave and any alleged adverse action. For these reasons, Walmart is entitled to summary judgment on Plaintiff's FMLA interference claim.

### There Is No Evidence of Pretext For FMLA Interference

As was addressed above, Walmart has articulated legitimate, non-retaliatory explanations for its actions with respect to Plaintiff and she has no evidence from which a factfinder could infer pretext.

7.   **Plaintiff Cannot Establish A Prima Facie Case of FMLA Retaliation.**

In order to establish a prima facie case of retaliation, Plaintiff must show that (1) she availed herself of a protected right under the FMLA; (2) Walmart took an action that a reasonable employee would have found materially adverse; and (3) a causal connection

exists between her protected activity and the adverse employment action. *Metzler*, 464 F.3d 1164 (10th Cir. 2006).

Walmart does not dispute that Plaintiff can establish the first element—as she took FMLA leave on numerous occasions during the course of her employment with Walmart. *UMFs 14.*   However, except as to her dismissal (for the reasons discussed above), Plaintiff cannot point to evidence that she suffered an adverse action.   Additionally, as to all actions on which her FMLA retaliation claim is based, she cannot establish the third element.   Specifically, for the reasons discussed above, Plaintiff cannot establish a causal connection between her use of FMLA leave and the alleged adverse actions.   Further, the fact that Plaintiff took FMLA leave does not insulate her from the legitimate, non-retaliatory decisions Walmart made regarding her employment.   *Smith v. Diffee Ford-Lincoln-Mercury, Inc*., 298 F.3d 955, 961 (10th Cir. 2002) ; *McCown v. UOP, Inc*., 1995 U.S. Dist. LEXIS 12655 at *2 (N.D. Ill. 1995) ("FMLA is not a shield to protect employees from legitimate disciplinary action by their employers if their performance is lacking in some manner unrelated to their FMLA leave.").   For these reasons, Walmart is entitled to summary judgment on Plaintiff's FMLA retaliation claim.

### There Is No Evidence of Pretext For FMLA Retaliation

As was addressed above, Walmart has articulated legitimate, non-retaliatory explanations for its actions with respect to Plaintiff and she has no evidence from which a factfinder could infer pretext.

## III.    Conclusion

For the reasons set forth above, Walmart respectfully requests that the Court enter summary judgment in favor of all Defendants as to each of the claims set forth in Plaintiff's Complaint and award Walmart any further relief that the Court deems just and appropriate.


Respectfully submitted,

**HALL, ESTILL, HARDWICK,**
**GABLE, GOLDEN & NELSON, P.C.**

By:
    s/Steven A. Broussard, OBA #12582
    320 South Boston Avenue, Suite 200
    Tulsa, OK  74103-3706
    Telephone:  (918) 594-0400
    Facsimile:  (918) 594-0505
    Email:  sbroussard@hallestill.com

**ATTORNEYS FOR DEFENDANTS,**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of April, 2016, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

Jana B. Leonard
Shannon Haupt
LEONARD & ASSOCIATES
8265 South Walker
Oklahoma City, Oklahoma 73139

s/ Steven A. Broussard

_____

2656837.1:910176:0